STATE OF NEBRASKA EX REL. CLARENCE A. H. MEYER, ATTORNEY GENERAL, APPELLANT, v. LOUIS WEINER ET AL., APPELLEES.

205 N. W. 2d 649

Filed March 30, 1973.   No. 38657.

Clarence A. H. Meyer, Attorney General, and Robert H. Petersen, for appellant.

Alfred A. Fiedler of Fiedler & Fiedler, for appellees.

Heard before WHITE, C. J., BOSLAUGH, SMITH, McCOWN, NEWTON, and CLINTON, JJ., and RONIN, District Judge.

RONIN, District Judge.

This is an action in equity wherein Clarence A. H. Meyer, Attorney General of the State of Nebraska, seeks to enjoin the defendants, Louis Weiner and Robert L. Solomon, from continuously engaging in unlicensed real estate practices. The trial court refused to issue a permanent injunction. On appeal the judgment of the trial court is reversed.

The parties stipulated that the real estate licenses of the defendants were previously revoked by the Real Estate Commission on September 1, 1967, which order of revocation was affirmed by this court on November 7, 1969. Weiner v. State Real Estate Commission, 184 Neb. 752, 171 N. W. 2d 783.

The record discloses that the defendant Louis Weiner was actively involved in three different sales of real estate and three attempted sales, or a total of six different incidents occurring in 1970 and 1971. Weiner maintained an office identified as Weiner Real Estate, and used forms for settling real estate transactions with the caption "Louis Weiner Real Estate." On the three sales that were completed, Weiner showed the property, negotiated the final purchase price, presented the purchase agreement for execution by the buyer, and collected the earnest deposit money with checks payable to him personally. Weiner contacted the loan company for financing, personally advanced money for necessary appraisal fees and credit reports on the purchasers, and was present at the closing of the sales. Louis Weiner's brother, H. H. Weiner, signed the purchase agreements as the real estate agent for the seller. None of the purchasers knew H. H. Weiner and stated all their dealings were with the defendant Weiner.

The defendant Solomon is involved in three of these six real estate transactions with Weiner. In the Corner purchase agreement the purchasers originally contacted Solomon who took them out and showed them the property. The purchasers first met Weiner when Solomon brought Weiner with him and presented a purchase agreement which was executed by them. The earnest money was paid either to Solomon or Weiner. Weiner arranged for the loan and was present for the closing.

In an attempt to sell real estate, Solomon brought a written offer to purchase with deposit to Jan Pusch who had verbally listed property with Weiner for sale. The seller discussed and objected to the amount of the

real estate commission. Solomon stated that the amount of the commission would have to be resolved with Weiner. Later the purchase agreement was signed, but the purchasers were unable to finance a loan.

In the Charles Hammel real estate transaction which resulted in a sale, both Weiner and Solomon showed him the property and discussed with him the necessary requirements of a purchase agreement which was signed in Weiner's office, with Weiner receiving the downpayment with check made payable to him and Weiner signing a receipt for $50 for cash received in connection with the downpayment.

Weiner testified that Solomon worked for him at the time they had their real estate licenses, that Solomon is helping him now by being his car driver, and that he was loaning Solomon money "and helping him out until he gets the license."

Section 81-867, R. R. S. 1943, defines the term real estate broker as one who for another and for valuable consideration sells or negotiates for sale any real estate, or who assists or directs in the procuring of prospects, "or the negotiation or closing of any transaction which does or is calculated to result in the sale, exchange, leasing or renting of any real estate."

Section 81-868, R. R. S. 1943, defines the term real estate salesman as one who for compensation of any kind is employed, either directly or indirectly, by any real estate broker to sell, purchase, or negotiate for the sale, purchase, exchange, or renting of any real estate.

Section 81-869, R. R. S. 1943, provides as follows: "It shall be unlawful for any person to act as a real estate broker or real estate salesman without first having procured a license to be issued by the State Real Estate Commission, as hereinafter provided for."

The District Court made no findings of fact as to whether the activities of the defendants as shown by the record constituted continuing violations in 1970 and 1971 of section 81-869, R. R. S. 1943. While the num-

ber and extent of the foregoing violations of the defendant Solomon are substantially less than those of the defendant Weiner, we hold that the record supports a finding that the activities of both defendants constituted open, continuous, and intentional violations of the foregoing statutes regulating the sale of real estate.

The trial court found that no criminal action was ever filed against either defendant as provided in section 81-887, R. R. S. 1943, which provides for a fine upon conviction for any person acting as a real estate broker or real estate salesman without having first obtained a proper license. It was apparently for this reason the trial court found that the plaintiff had an adequate remedy at law and denied injunctive relief.

Our court held in State v. Chicago & N. W. Ry. Co., 147 Neb. 970, 25 N. W. 2d 824, that the Attorney General could enjoin a railroad company from using reflectorized discs on switchstands and stated as follows: "We recognize the general rule that acts punishable by fine will not ordinarily be enjoined. But this rule does not have the force of denying such a remedy in the prevention of public wrongs arising out of repeated violations of a penalty statute which harmfully affects the interests of the public. And this rule does not require that such acts should create a nuisance. Injunction is properly used for the protection of public rights, property, or welfare, whether or not such acts violate a penalty statute and whether or not they constitute a nuisance." See, also, State ex rel. Spillman v. Heldt, 115 Neb. 435, 213 N. W. 578.

The foregoing rule was cited with approval in the case of State ex rel. Meyer v. Knutson, 178 Neb. 375, 133 N. W. 2d 577. In that case the State brought an action to enjoin the defendant from the practice of professional architecture. The defendant was not a registered architect as required by law, the violation of which on conviction provided a criminal penalty

therefor. Injunction was held therein to be a proper remedy in the protection of public rights, property, or welfare.

The obvious legislative intent in the detailed regulatory and licensing requirements governing the sale of real estate as provided in sections 81-862 to 81-887, R. R. S. 1943, is for the protection of public rights, property, or welfare. We hold that a court of equity may properly afford injunctive relief where there has been a continuing and flagrant course of violations of the real estate law even though these acts may be subject to criminal prosecution. We hold that injunction is a proper remedy in this case.

The judgment is reversed and the cause remanded with directions to the trial court to issue forthwith a permanent injunction against the defendants in accordance with this opinion.

REVERSED AND REMANDED WITH DIRECTIONS.